**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**STEPHANIE A. PACKER O/B/O G.G.P.,**

     **Plaintiff,**

**vs.**                               **CIVIL ACTION NO. 3:19-CV-00257**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying Plaintiff's application she filed on behalf of her minor daughter for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383f. By Order entered April 9, 2019, (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request to for judgment on the pleadings (ECF No. 12), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

## Procedural History

The Plaintiff, Stephanie A. Packer (hereinafter referred to as "Plaintiff"), filed an application for SSI benefits on behalf of her minor daughter, G.G.P. (hereinafter referred to as "Claimant") in October 2008 alleging disability due to "cleft palate with nasa[l] escape, pharyngeal flap, swallowing difficulties, [and] hearing difficulties." (Tr. at 233-238, 267) In a determination dated May 10, 2011, the Claimant was found disabled as of September 15, 2008.[1] (Tr. at 19) On March 23, 2015, it was later determined that Claimant was no longer disabled as of March 1, 2015, when she was six years old. (Tr. at 137-140) In a written decision dated October 26, 2015, this determination was upheld following a disability hearing. (Tr. at 150-159) On October 30, 2015, a hearing before an Administrative Law Judge ("ALJ") was requested on Claimant's behalf. (Tr. at 176-179)

Thereafter, an administrative hearing was held on August 28, 2017 before the Honorable Maria Hodges, ALJ (Tr. at 84-109); a supplemental hearing was held on January 24, 2018 at Plaintiff's request. (Tr. at 79-83) On February 26, 2018, the ALJ entered an unfavorable decision. (Tr. at 16-47) The ALJ's decision became the final decision of the Defendant (hereinafter "Commissioner") on February 15, 2019 when the Appeals Council denied Plaintiff's Request for Review. (Tr. at 1-6)

On April 8, 2019, Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Plaintiff filed her Brief in Support of Judgment on the Pleadings (ECF No. 12), and in response,

---

[1] This appears to be a typographic error, Claimant's date of birth is September 25, 2008. (Tr. at 110)

the Commissioner filed a Brief in Support of Defendant's Decision. (ECF No. 13) Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 6 years old when the SSA determined she was no longer disabled and 8 years old at the time of the first administrative hearing and in the third grade. (Tr. at 110, 89-90) During the relevant period, she attended Altizer Elementary School in Cabell County, West Virginia. (Tr. at 860-863)

## Standard

When determining whether a child claimant remains disabled, the Commissioner applies a three-step medical improvement review standard. See 20 C.F.R. § 416.994a(a); Social Security Ruling ("SSR") 05-03p, 2005 WL 6491605. At the first step, the ALJ determines whether medical improvement has occurred in the impairments that were severe as of the time of the most recent favorable decision, known as the comparison point decision ("CPD"). 20 C.F.R. § 416.994a(b)(1). At step two, the ALJ must determine whether the child's impairments at the time of the CPD now meet or medically equal the same listing that it met or medically equaled at the time of the CPD. Id. § 416.994a(b)(2). At step three, the ALJ must determine whether the child is currently disabled under the rules in 20 C.F.R. § 416.924(c) and (d), considering all the impairments that the child had at the time of the ALJ review, including any not present or not considered at the time of the CPD. Id. § 416.994a(b)(1)-(3). The ALJ must determine whether the child has a medically determinable "severe" impairment or combination of impairments, and whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment in the listings. Id. §§ 416.924(c), (d), 416.994a(b)(3)(i)-(iii).

In determining whether an impairment or combination of impairments functionally equals

the listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1)(i)-(vi). A child functionally equals a listing when she has a severe impairment that results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. Id. § 416.926a(a). The Regulations define a "marked" limitation when an impairment "interferes seriously" with the child's ability to independently initiate, sustain or complete activities. Id. § 416.926a(e)(2). The definition of "extreme" is "interferes very seriously" with the ability to function. Id. § 416.926a(e)(3).

In an action considering termination of benefits, the claimant still has the burden to prove disability, but the Commissioner has the burden of producing evidence to meet or rebut the presumption that the claimant continues to be disabled. See Sykes v. Colvin, No. 5:15-DV-228-RN, 2016 WL 3129174, at *2 (E.D.N.C. June 2, 2016)(citing Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985)).

**Summary of ALJ's Decision**

At the first step, the ALJ determined that the most recent favorable medical decision finding that Claimant was disabled is the CPD of May 10, 2011. (Tr. at 22, Finding No. 1) Next, the ALJ found that at the time of the CPD, Claimant had the following medically determinable impairments that were found to medically equal a listing: cleft palate; speech disorder; asthma; prematurity; history of low birth weight; and chronic otitis media with tube placement. (Id., Finding No. 2)

At the second step, the ALJ determined that medical improvement occurred as of March 1, 2015. (Id., Finding No. 3) Next, the ALJ concluded that since March 1, 2015, Claimant's

impairments at the time of the CPD did not meet or medically equal any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23, Finding No. 4)

At the third step, the ALJ determined that Claimant was a school age child as of March 1, 2015 and currently a school-age child. (Tr. at 24, Finding No. 5) The ALJ determined that since March 1, 2015, Claimant's impairments at the time of the CPD had not functionally equaled the Listing of Impairments. (Id., Finding No. 6) Next, the ALJ determined that since March 1, 2015, Claimant had the following severe impairments: status post teratoma resection with cleft palate; velopatal pharyngeal insufficiency; a learning disability; speech delay; asthma; attention deficit hyperactivity disorder; and oppositional defiant disorder. (Tr. at 31, Finding No. 7) The ALJ then concluded that since March 1, 2015, Claimant has not had an impairments or combination of impairments that meets or medically equals one of the listed impairments or has had an impairment or combination of impairments that functionally equals the listings. (Tr. at 32, Finding No. 8; Tr. at 33, Finding No. 9) Ultimately, the ALJ concluded that Claimant's disability ended as of March 1, 2015 and had not become disabled again since that date. (Tr. at 40, Finding No. 10)

**Plaintiff's Challenges to the Commissioner's Decision**

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because she failed to thoroughly explain the advantages of having legal representation in a Social Security disability case because it was apparent that Plaintiff and Claimant were incapable of adequately representing themselves; this is evident where Plaintiff was unaware of how to obtain information from the West Virginia Department of Health and Human Resources ("DHHR") concerning Claimant's tendencies to run away and need for wearing a GPS device. (ECF No. 12 at 5-6) Next, Plaintiff argues that the ALJ failed to develop the record given Plaintiff's pro se status, and should

have issued a subpoena to the DHHR to obtain this information. (Id. at 6-7) Finally, Plaintiff contends that Claimant's disability continues insofar as Bradley J. Bradford, M.D. opined that Claimant had "marked" limitations in "Health and Physical Well-Being", but coupled with Claimant's need to wear a GPS, sleep with her mother, and that her home's windows and doors must be screwed shut with locks and alarms, Claimant demonstrated "marked" limitations in "Caring for Yourself." (Id. at 7) Plaintiff requests for supplemental security income benefits be reinstated or alternatively, for remand for a rehearing. (Id. at 7-8)

In response, the Commissioner argues that Plaintiff was advised numerous times in writing of her right to obtain counsel prior to the administrative hearing, and in addition to the fact that there is no statutory right to be represented, having no counsel or representation at a disability hearing alone is not cause for remand, however, in this case, upon being so advised by the ALJ, Plaintiff knowingly and voluntarily waived her right to have representation at the administrative hearing. (ECF No. 13 at 8-10) Next, the Commissioner contends that the ALJ fulfilled her duty to obtain the additional evidence from the DHHR, albeit unsuccessful, however, the ALJ had ample evidence before her and the written decision shows that the ALJ considered the evidence as it related to Claimant's tendencies to run away from home, having to wear a GPS device and precautions taken to prevent Claimant from running away. (Id. at 10-12) Further, Plaintiff submitted an additional report from the DHHR to the Appeals Council that concerned the same information already considered by the ALJ and did not demonstrate that it might have changed the outcome of the case or that it was prejudicial. (Id. at 12-13) Finally, the ALJ's finding Claimant had a less than marked limitation in "Caring for Yourself" is supported not only by the ample evidence of record, but also by three medical experts' opinions. (Id. at 13-15) The Commissioner

asks this Court to affirm the decision because it is supported by substantial evidence. (Id. at 16)

## The Relevant Evidence of Record[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

<u>School Records:</u>

According to Claimant's kindergarten teacher, she had no more than "slight problems" in acquiring and using information and attending and completing tasks; Claimant showed "an obvious problem" in carrying out multi-step instructions. (Tr. at 299-301) Claimant showed "no problems" in the domains of "interacting and relating with others", "moving about and manipulating objects", and "caring for herself". (Tr. at 302-304)

Claimant's first grade teacher reported that Claimant had slight problems in most areas of "acquiring and using information", but an "obvious problem" in reading and comprehending written material and comprehending and doing math problems and "a very serious problem" in expressing ideas in written form. (Tr. at 313) Her teacher explained, "[a]t times, [Claimant] seems confused when given oral directions – especially in a group setting. She is very shy, so she doesn't really ask for help. She does better one on one or small group instruction." (Id.) With "attending and completing tasks", Claimant's first grade teacher noted she had "no problem" or "slight problem" in certain areas, but "an obvious problem" in carrying out multi-step instructions, completing class/homework assignments, and completing work accurately without careless mistakes. (Tr. at 314) Claimant was deemed to have "a serious problem" in working at reasonable pace/finishing on time. (Id.) In "interacting and relating with others", Claimant showed no greater

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

than "slight problems" and her teacher noted she had trouble expressing herself orally, and that Claimant was shy, but "[a]t times, she exhibits a 'stubborn streak' when [the teacher] ask[ed] her to do something, especially if [Claimant] doesn't want to do it." (Tr. at 315) Claimant had no problems in "moving about and manipulating objects" (Tr. at 316) and mostly no problems in "caring for herself", however, Claimant did demonstrate "a serious problem" in knowing when to ask for help. (Tr. at 317) Her teacher further notes that Claimant had recently started chewing on her clothes or her bookbag straps. (Tr. at 319)

Medical Evidence:

Claimant was born with a low birth weight, but she achieved a normal weight over time. (Tr. at 388) When she was four years old, she underwent successful surgery to repair her history of cleft palate with nasal escape and a post pharyngeal flap. (Tr. at 435-437, 771) Claimant had a history of a speech disorder with a mild articulation deficit, but made good progress with therapy. (Tr. at 630-632) In the fall of 2016, Claimant was diagnosed with oppositional defiant disorder and ADHD. (Tr. at 696)

Since March 2015, Claimant was prescribed medications to manage her ADHD and allergy symptoms. (Tr. at 715, 770) Other than having tubes in her ears to correct chronic otitis media in September 2015 (Tr. at 702-704), Claimant required no surgeries or hospitalizations after March 2015. (Tr. at 770)

Since March 2015, Claimant's examiners routinely reported that she was well-appearing, well-nourished, and neatly groomed with good hygiene and appropriate dress. (Tr. at 39, 690, 715, 718, 721, 723, 726, 729, 732, 738, 742, 746, 750, 753, 757, 761, 773, 812) Physical examinations revealed normal findings, including that Claimant maintained a normal weight, and exhibited an

intact but short palate, normal pulmonary and cardiovascular findings, a normal gait, normal muscle tone and strength, normal range of motion, and grossly intact cranial nerves. (Tr. at 681, 715, 715, 718, 721, 723, 726, 729, 732, 738, 750, 753, 771) From a mental standpoint, Claimant established rapport easily and routinely exhibited good eye contact, normal orientation, a full range affect, normal attention, normal concentration, intact memory, normal thought content, and normal thought processes. (Tr. at 690-691, 739, 742-743, 746-747, 750, 753, 757-758)

Psychological Opinion Evidence:

In September and October 2015, Julianne McGinnis, M.A., performed a psychological evaluation and conducted several tests of Claimant when she was 7 years old. (Tr. at 686-700) Based on the results of the tests and her interviews of both Claimant and Plaintiff, Ms. McGinnis diagnosed Claimant with "disinhibited social engagement disorder; attention deficit disorder, combined type; and oppositional defiant disorder – moderate (only in 2 setting)." (Tr. at 696)

In February 2016, Angela Mellace, M.A., provided a psychological evaluation for Cabell County Schools to determine if Claimant would be eligible for special education services when Claimant was 8 years old. (Tr. at 773-782) Based on the results of testing, Ms. Mellace determined that Claimant was below average or low range in reading, comprehension, math, and spelling. (Tr. at 782)

Medical Opinion Evidence:

On March 19, 2015, Uma Reddy, M.D. opined that Claimant's impairments did not meet, medically equal, or functionally equal any listed impairment. (Tr. at 659-666) Specifically, Dr. Reddy opined that Claimant had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about

and manipulating objects, and health and physical well-being and no limitation in the domain of caring for herself. (Tr. at 661-662) On August 25, 2015, James Binder, M.D. affirmed all of Dr. Reddy's findings, except Dr. Binder opined that Claimant also had no limitation in health and physical well-being. (Tr. at 671-678)

On October 21, 2017, Bradley Bradford, M.D., responded to "Medical Interrogatory – Child", and based upon his review of the evidence of record, he opined that Claimant had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for yourself. (Tr. at 855-856) In the domain of health and physical well-being, Dr. Bradford found that Claimant had a marked limitation because of "major surgeries and ongoing care." (Tr. at 856)

### The Administrative Hearing – August 28, 2017

#### Claimant's Testimony:

Claimant said that she had never been held back in school and that she "go[es] out for only one" special assistance for class, but could not recall for what. (Tr. at 90-91) When not at school, she said she goes to her best friend's house to play video games. (Tr. at 91) She stated that she does her homework, gets along with other kids and her teachers at school, can tie her own shoes, can ride a bike without training wheels, can feed herself, can shower or bathe herself, and can dress herself. (Tr. at 91-93) Claimant confirmed that she takes two medications that help her pay attention. (Tr. at 93) She takes care of her pet pig, Hamlet, and sometimes takes him for walks. (Id.) Claimant stated that she sleeps well at night. (Tr. at 94)

#### Plaintiff's Testimony:

Plaintiff testified that her main concern for Claimant is "the disinhibited social

engagement" and that there are "safety issues." (Tr. at 96) Plaintiff explained that Claimant sleeps in a locked, alarmed bedroom with Plaintiff, that the windows are screwed closed, and that all the doors and windows have alarms and locks. (Tr. at 96-97) Plaintiff stated that Claimant would take off in the middle of the night. (Tr. at 98) She related that a man picked Claimant up and took her to McDonald's and then dropped Claimant off at the house; Plaintiff stated she only knew about it because the man called the police and an officer showed up at Plaintiff's door at midnight. (Id.) Plaintiff testified that Claimant was in bed "soaking wet with a Happy Meal" and that she "would have never known." (Id.) Plaintiff stated that Claimant had taken off again with Plaintiff's three-year old grandson; the children were found before the dogs were able to locate them. (Tr. at 98-99) Plaintiff testified that there was nothing that triggered Plaintiff's running away – she's not angry or afraid, but she will get in a vehicle with somebody and just go. (Tr. at 99) Plaintiff stated that she had to force Claimant's school to do an IEP and CPS helped Plaintiff locate a GPS system that would work for Claimant. (Id.) Plaintiff has met with Claimant's new teacher advising that Claimant must have her GPS device on her at all times and that she often runs off. (Tr. at 104) Plaintiff believes that Claimant would do better at school in a one-on-one setting. (Tr. at 105) Since starting the IEP, there has not been any homework. (Id.) Claimant gets taken out of class for reading, but does her speech in the classroom. (Id.) Plaintiff testified that Claimant was behind in reading. (Tr. at 99) She indicated that Claimant attended Marshall's Speech and Hearing Center which "graduated her", but recommended that she continue speech at school to help with Claimant's reading. (Tr. at 100)

Plaintiff stated that Claimant doesn't sleep a lot. (Id.) As for her running away episodes, Claimant considers these "going on adventures" but there's no rhyme or reason for them. (Tr. at

101) Plaintiff stated that Claimant does not know her address or telephone number. (Id.) Claimant may know about safety routines, but not follow through with them. (Id.) Plaintiff testified that sometimes Claimant is bouncing off the walls and not afraid of anyone, and other times she is very clingy. (Tr. at 105) Claimant only has one friend who is almost like a brother to her; she has no girlfriends and does not have sleep overs or play dates. (Tr. at 106)

As for activities, Plaintiff testified that Claimant does not participate in after school sports, and learned how to ride a bike over the past summer, but can't jump rope because she's not coordinated enough. (Tr. at 101-102) Claimant can tie her shoes. (Tr. at 101)

Claimant has had tubes placed in her ears and due to nasal regurgitation, she still drinks from a sippy cup; at school, she uses a straw. (Tr. at 102) Plaintiff testified that Claimant is at risk for aspiration, although surgery for her cleft palate was successful. (Id.) Claimant has seasonal asthma, but Plaintiff tries to stay on top of it with home and allergy medicines. (Tr. at 103) Plaintiff testified that Claimant's has not had side effects with the medicines she is now taking. (Tr. at 105)

**The Administrative Hearing – January 24, 2018**[3]

Plaintiff's Testimony:

Plaintiff testified that Claimant had another ear surgery the day before and that Claimant still receives ongoing care, although her physical condition had improved greatly. (Tr. at 82) Plaintiff stated that "we continue to require medical attention monitoring [Claimant's] mental condition", which remains Plaintiff's greatest concern. (Id.) Plaintiff opined that this severely limits Claimant in many aspects. (Tr. at 82-83)

---

[3] Claimant did not appear or testify at the supplemental hearing. (Tr. at 81)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

<u>Proceeding Pro Se:</u>

Plaintiff has argued that the ALJ failed to adequately advise of her right to representation. (ECF No. 12 at 5-6) As noted by the Commissioner, there is "no duty to insist that a claimant have counsel" and further, claimant is not entitled by statute to have counsel or a non-attorney representative at a disability hearing, and that standing alone, does not merit remand. <u>See</u> <u>Marsh v. Harris</u>, 632 F.2d 296, 300 (4th Cir. 1980). (ECF No. 13 at 8) The transcript from the

administrative hearing demonstrates that Claimant knowingly and voluntarily waived her right to have a representation:

| | |
|---|---|
| ALJ: | Ma'am, I see you're here without a representative today, is that correct? |
| Plaintiff: | Yes. |
| ALJ: | Do you understand you have the right to have a representative who could be an attorney, or a non-attorney? |
| [Plaintiff]: | Yes. |
| [ALJ]: | And as such, a representative could help you prepare for a hearing, explain medical terms, and obtain the records. Do you understand that? |
| Plaintiff: | Yes. |
| ALJ: | Such representative cannot charge you a fee unless I approve that fee. Now, in this case where it's a termination case, they could charge you an hourly rate, but, I would still have to approve it. Do you understand that? |
| Plaintiff: | Yes. |
| ALJ: | Do you wish to proceed today without a representative, or would you like to postpone this case one time in order to try to obtain a representative? |
| Plaintiff: | No. |
| ALJ: | No which? |
| Plaintiff: | I do not wish to postpone.[4] |

(Tr. at 86-87) Indeed, prior to the administrative hearing in August 2017, the Social Security Administration ("SSA") informed Plaintiff of her right to counsel in writing four times: in a March 23, 2015 SSI cessation letter (Tr. at 139); in an October 27, 2015 reconsideration notice (Tr. at 175); in a December 3, 2015 request for hearing acknowledgement letter (Tr. at 181, 184-185); and in a June 12, 2017 notice of hearing letter (Tr. at 196, 200-201). Moreover, at the start of the supplemental hearing in January 2018, Plaintiff acknowledged the ALJ's observation that Plaintiff herself requested the supplemental hearing in order to submit additional evidence on Claimant's behalf, discussed *infra*. (Tr. at 81)

In sum, based on Plaintiff's representation to the ALJ at both administrative hearings, coupled with the fact that Plaintiff received several letters from the SSA informing her of her right

---

[4] At the onset of the written decision, the ALJ noted that although Plaintiff "was informed of the right to representation, she chose to appear and testify without the assistance of an attorney or other representative." (Tr. at 19)

to have counsel or other representative assist her at the hearing or to assist in the preparation of her case, the undersigned **FINDS** that Plaintiff's argument that the ALJ's decision is not supported by substantial evidence because she failed to adequately advise Plaintiff of her right to representation lacks merit.

Duty to Develop the Record:

Next, Plaintiff argues that the ALJ erred by failing to develop the record by not issuing subpoenas to the DHHR given her pro se status. (ECF No. 12 at 6-7)

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id. The Fourth Circuit has held that when a claimant is not represented, the ALJ is under a heightened duty to ensure that all the facts of the case are fully explored, and that a failure on the part of the ALJ to perform this duty may result in prejudice to the claimant, thus requiring the case to be remanded for further proceedings. Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981) (holding that the ALJ failed in her duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts in a case involving an unrepresented, poorly educated, pro se claimant); Sims v. Harris, 631 F.2d 26, 27–28 (4th Cir. 1980); Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980).

Nevertheless, it is a claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 416.912(a) (stating that in general, you have to prove to us that you are blind or disabled. This means that you must inform us about or furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).) Thus, a claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment. Id. Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

The August 2017 administrative hearing shows that Plaintiff and the ALJ discussed Plaintiff's intent to include the DHHR records and Plaintiff confirmed that not only did she have an opportunity to see what was in the file, she affirmed that she submitted "quite a bit of it." (Tr. at 88) When asked if she was aware if there were any records missing, Plaintiff advised that Claimant had a CPS file that may help explain things, however, the ALJ advised Plaintiff that she was uncertain those records would be provided given their confidential nature. (Id.) However, the ALJ invited Plaintiff to explain the safety issues that she experienced with Claimant. (Tr. at 88-89) After Plaintiff testified about the safety issues (Tr. at 96-97), the ALJ advised that she would try to obtain the CPS records but did not know how successful that would be. (Tr. at 97) Plaintiff informed the ALJ that Dustie Edgell of the Children's Place worked with Claimant for the Cabell County CPS, who also provided Plaintiff's parenting skills and worked on the safety issues with her. (Id.)

When asked if Plaintiff wanted her sister-in-law to testify, Plaintiff was not sure if she would tell the ALJ anything different from what Plaintiff had testified to. (Tr. at 106) The ALJ reminded Plaintiff that "[i]t's your case, it's not mine, so it's up to you." (Id.) Plaintiff then

indicated that her sister-in-law's testimony would substantiate the fact that Claimant is a safety risk. (Id.) Again, the ALJ advised that she would try to get the CPS records from the Cabell County DHHR and reminded Plaintiff that it was up to her to have her sister-in-law testify and that the ALJ would be "more than willing to listen to her." (Tr. at 107) The ALJ further advised Plaintiff that "[i]f you're fine with what you've said, that's fine too. It's whatever you feel is most appropriate. It's not my decision to make." (Id.) Plaintiff then stated that "if we're able to get the CPS records, we won't need a statement from her." (Id.) The ALJ then advised that Plaintiff's sister-in-law would be welcome to write a statement and send it to the file as well. (Id.) The ALJ told Plaintiff that if the CPS records were not marked confidential, then she would forward them to Plaintiff, however, the ALJ advised Plaintiff that some psychological records are not permitted to be sent out because of safety reasons. (Id.) Plaintiff indicated that she understood. (Id.)

The ALJ closed the hearing advising Plaintiff that it may take at least a month to get the additional records from CPS, and that Plaintiff would be given some time to respond to them if she sends the records to her. (Tr. at 108) Again, Plaintiff stated that she understood. (Id.) The ALJ then assured Plaintiff that she would continue to receive benefits pending the decision. (Id.)

Prior to the supplemental hearing in January 2018, the ALJ sent Plaintiff a letter dated October 27, 2017 that indicated that she received additional evidence she proposed be entered into the record. (Tr. at 366-367) That evidence included: the statement of Heather Warren, M.A. dated September 15, 2017 (Tr. at 364-365); a copy of the Evidence Request for the DHHR dated September 7, 2017 (Tr. at 837-838); a copy of the Evidence Request – 2nd Request for the DHHR dated September 26, 2017 (Tr. at 839); a request for medical interrogatory dated October 16, 2017 (Tr. at 840-849); the responses to the medical interrogatory by Bradley Bradford, M.D. dated

October 22, 2017 (Tr. at 850-858); and the physician professional qualifications for Bradley Bradford, M.D. (Tr. at 859) The ALJ further advised Plaintiff that she may request a supplemental hearing, that she "may request that [the ALJ] issue a subpoena to require the attendance of witnesses or the submission of records", and that Plaintiff "must submit a subpoena request, in writing, no later than 10 days before the date of any supplemental hearing." (Tr. at 367) On or about November 13, 2017, Plaintiff sent a written request for a supplemental hearing "so that [she] may have the opportunity to submit additional evidence concerning the safety and well being of [Claimant]." (Tr. at 368-369) In the same letter, Plaintiff acknowledges that "[s]ince CPS has not responded to your request of records, I would like the opportunity to acquire the information for you." (Tr. at 368)

At the supplemental hearing in January 2018, the ALJ acknowledged that she received additional information from Plaintiff and that Plaintiff herself requested the hearing. (Tr. at 81) After the ALJ confirmed that she received a statement from Dustie Edgell[5] and that it was in the file, Plaintiff advised that there was nothing else to add to the record with respect to the information from CPS. (Tr. at 82, 83)

As an initial matter, an ALJ has discretion as to whether or not to issue subpoenas. See, generally, Goan v. Shalala, 853 F.Supp. 218 (S.D.W.Va. Feb. 3, 1994)(Faber, J.) Further, it is important to note that Plaintiff was advised in writing by the SSA in a letter dated December 3, 2015 that the ALJ has discretion to issue a subpoena, and further, that "[t]he ALJ will issue a subpoena only if he or she thinks the evidence is necessary to decide your case, and the evidence cannot be obtained another way. You must ask the ALJ to issue a subpoena at least 5 days before

---

[5] This statement is referenced as Exhibits 27E and 34E. (Tr. at 370, 384)

your hearing date." (Tr. at 181)[6]

It is clear that the ALJ not only complied with her duty to assist this pro se Plaintiff to develop the evidence of record, but she also considered the evidence as it related to Claimant's CPS file, which included: Plaintiff's testimony that Claimant has safety issues, that she "has a locked alarmed bed and all of the doors in the house have alarms" (Tr. at 33), and that "[o]ne time, [Claimant] climbed through a window in the middle of the night and ran out. A stranger brought her home" (Tr. at 33-34); that Claimant sleeps in the bedroom with her mother (Tr. at 34); Plaintiff's statement in the function report indicating safety is an ongoing issue, "but this issue was fixed by placement of a GPS and only one incident was noted in [the] record. In addition, DHHR approved the claimant's home concerning safety" (Tr. at 34); the statement provided by Dustie Edgell which indicated she provided home safety services to Claimant through the DHHR because Claimant had left the home and took off, but since then, there were no safety issues and the case closed (Tr. at 36); and Plaintiff's testimony that Claimant has a GPS (Tr. at 39).

It is noteworthy that Plaintiff submitted to the Appeals Council an additional report from the DHHR entitled "In-Home Safety Plan" that related to the December 2015 incident which also indicated that Children First, LLC provided "safety services" three times a week and was to begin on January 4, 2016. (Tr. at 13-15) The In-Home Safety Plan is not signed or dated.

A review of this evidence demonstrates that it not only corroborated Plaintiff's testimony, but also shows that the safety issues had resolved meriting closing of the CPS case on Claimant. Even allowing for the ALJ's "heightened duty" to ensure that all the facts of Claimant's case are

---

[6] The record indicates that Plaintiff received at least two other letters from the SSA dated June 12, 2017 and November 20, 2017 informing her of the ALJ's discretion to issue subpoenas for evidence or information "you reasonably need to present your case fully." (Tr. at 197, 216)

to be fully explored, there is no indication that the ALJ failed to discharge her duty. Walker v. Harris, 642 F.2d at 714. Furthermore, there is no indication that Claimant (or Plaintiff) suffered any prejudice by not having the DHHR/CPS records subpoenaed, because Plaintiff's testimony and other evidence of record adequately presented the facts and circumstances surrounding the need for CPS intervention due to Claimant's safety issues that were already before the ALJ in order for her to render a decision. See, e.g., Farnsworth v. Astrue, 604 F.Supp.2d 828, 834 (N.D.W.Va. March 4, 2009). In this case, the ALJ advised Plaintiff not only of her right to have a supplemental hearing, but also that she can request the ALJ issue subpoenas. Plaintiff elected to have a supplemental hearing, and advised that she would obtain the records from the DHHR herself. In short, the record shows that the ALJ met her burden of helping this pro se Plaintiff develop her case in order to ensure a full and fair hearing, and that sufficient evidence was presented for the ALJ to make an informed decision. See, Fleming v. Barnhart, 284 F.Supp.2d 256, 272 (D.Md. 2003); 20 C.F.R. § 416.912(b) ("We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence"). Accordingly, the undersigned **FINDS** that Plaintiff's argument that the ALJ failed in her duty to help develop the evidence or record on account of Plaintiff's pro se status lacks merit.

Caring for Yourself:

As stated *supra*, Plaintiff contends that the substantial evidence supports a finding that Claimant also has marked limitations in one additional domain: caring for yourself. (ECF No. 12 at 7)

Pursuant to the Regulations, a school-age child (age 6 to attainment of age 12) without an

impairment should be independent in most day-to-day activities, including dressing yourself, bathing yourself, although reminders are sometimes needed to do these routinely. See 20 C.F.R. § 416.926a(k)(2)(iv). In addition, school-age children should be able to recognize circumstances that lead to feeling good and bad about herself; begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior; demonstrate consistent control over behavior and avoid behaviors that are unsafe; begin to imitate more of the behavior of adults she knows; and perform most daily activities independently. See SSR 09-7p, 2009 WL 396029, at *5.

Examples of limited functioning in this domain include continuing to place non-nutritional or inedible objects in mouth; using self-soothing activities showing developmental regression such as thumbsucking, re-chewing food, or having restrictive or stereotyped mannerisms such as body rocking and headbanging; dressing or bathing appropriately for the age due to impairments affecting this domain; engaging in self-injurious behavior such as suicidal thoughts or actions, self-inflicted injury, or refusal to take medication, or ignoring safety rules; failing to spontaneously pursue enjoyable activities or interests; or having disturbance in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3).

Earlier in the written decision, the ALJ considered the Plaintiff's function report provided on Claimant's behalf, wherein Plaintiff noted that safety had been an ongoing issue, "but this issue was fixed by placement of a GPS and only one incident was noted in [the] record." (Tr. at 34) Further, the ALJ noted that the DHHR approved Claimant's home concerning safety.[7] (Id.) Later in the written decision, the ALJ also considered the findings of Dustie Edgell, BSW, LSW, "who noted the claimant was sent to DHHR for home safety services. At one point, she got out of the

---

[7] The ALJ cited Exhibit 17E, however, that appears to be a scrivener's error. Exhibit 31E (Tr. at 374-381) concerns records from the Cabell County DHHR that reference the run-away episode from December 2015.

home and took off. She noted that there were no safety concerns now and the case was to be closed." (Tr. at 36, 370) Of further interest here is that the ALJ considered the opinion evidence provided by Bradley Bradford, M.D., who opined that Claimant had a less than marked limitation in caring for herself after having an "opportunity to examine the totality of the record." (Tr. at 34, 850-858) Indeed, the ALJ considered the opinions provided by the State agency medical consultants, both of whom found that Claimant had no limitations in the domain of caring for herself, although the ALJ did not give as much weight to these opinions as she did to Dr. Bradford, having determined that the additional evidence supported a different finding. (Tr. at 35-36)

The ALJ considered additional evidence since March 1, 2015, beginning with the October 2015 examination by Ms. Julianne McGinnis who reported that Claimant was neatly groomed and had good hygiene and that she was appropriately clothed for the weather and situation. (Tr. at 39, 686-701) Additionally, the ALJ considered Claimant's testimony that she could feed herself and get herself a snack and that she could dress and shower herself. (Tr. at 39) The ALJ also considered the October 2015 report provided by Claimant's first grade teacher, Vicki Williams, which indicated that Claimant had no problems in handling frustration appropriately; in taking care of her personal hygiene or caring for her personal needs, including dressing and eating; in using good judgment regarding personal safety and dangerous circumstances; in identifying and appropriately asserting emotional needs; in responding appropriately to changes in her own mood; and in using appropriate coping skills to meet daily demands of the school environment. (Tr. at 39, 312-319) The ALJ acknowledged that Ms. Williams did note, however, that Claimant had a slight problem being patient when necessary and a very serious problem knowing when to ask for help. (Id.)

In addition to her review of Claimant's testimony, the evidence from the DHHR as it related

to Claimant's safety issues, and the educational evidence of record, the ALJ considered Plaintiff's testimony that Claimant has nasal regurgitation and must use a straw at school to drink and uses a sippy cup at home, and that Claimant has a GPS. (Tr. at 39) The ALJ noted that Claimant learned to tie her shoelaces and in an examination from February 2016, Ms. Angela Mellace noted Claimant to be clean, neat and appropriately dressed. (Tr. at 39, 773-782)

Accordingly, the ALJ determined that Claimant had a less than marked limitation in the domain of caring for yourself. (Tr. at 39) The ALJ provided a thorough analysis of the evidence that supported as well as detracted from Claimant's impairment in this domain, and ultimately, the ALJ determined that the substantial evidence of record indicated Claimant had no marked deficits in her ability to care for herself. The undersigned **FINDS** that the ALJ's finding and conclusion with regard to this domain is "rational" and based on substantial evidence. <u>Oppenheim</u>, 495 F.2d at 397.

The undersigned **FINDS** the ALJ's finding and conclusion in this domain is supported by substantial evidence; to attempt to find otherwise would result in an improper re-weighing of the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). In sum, the undersigned **FINDS** that the ALJ's determination that Claimant's disability ended as of March 1, 2015 is supported by substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** Plaintiff's request for judgment on the pleadings (ECF No. 12), **GRANT** the Defendant's

request to affirm the decision below (ECF No. 13), and **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 29, 2019.

Omar J. Aboulhosn
United States Magistrate Judge